**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Kevin S. Lesley,

    Plaintiff,

v.

Nancy Berryhill[1], Acting Commissioner of the Social Security Administration,

    Defendant.

No. CV-15-2519-PHX-SMM

**MEMORANDUM OF DECISION AND ORDER**

Plaintiff Kevin S. Lesley ("Lesley") seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("Commissioner"), which denied him disability insurance benefits under the Social Security Act. (Doc. 1.)[2] Lesley appeals to this Court to review and vacate the Commissioner's denial. (Doc. 18.) The Commissioner filed her Responsive Brief (Doc. 19), and Lesley filed his Reply (Doc. 22). Lesley's appeal is now fully briefed and ready for review.

The Court will grant Lesley's appeal, vacate the decision of the Commissioner denying Social Security Disability Benefits, and remand this matter to the Commissioner for an award of benefits.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy Berryhill is substituted for Carolyn Colvin as the Acting Commissioner of the Social Security Administration.

[2] "Doc." refers to the documents in this Court's file. "Tr." refers to the administrative transcript. A certified copy of the administrative transcript was provided to this Court by the Commissioner of the Social Security Administration on May 13, 2016. (Doc. 14.)

# BACKGROUND[3]

Kevin Lesley was born on June 30, 1961. (Tr. 64.) Lesley's employment history shows a 37-year history of successful work as an electrician. (Tr. 26-27, 174-199, 1062.) Lesley filed an application for Social Security disability insurance benefits on August 7, 2014. (Tr. 21.) In his application, Lesley alleged that he became disabled as of September 1, 2013. (Id. (otherwise referred to as "disability onset date").) In support of his application for disability, Lesley cited Stomach Cancer, Bowel Cancer, Stage 4 Cancer, Triple Bypass Surgery, 4 Stents in Heart, and Dementia. (Tr. 226.) His application was denied initially on September 29, 2014 (Tr. 63), and upon reconsideration on January 2, 2015 (Tr. 105-07). Lesley then sought a hearing before an administrative law judge ("ALJ").

On June 3, 2015, the ALJ held Lesley's hearing. (Tr. 21-35.) At the hearing, Lesley testified as well as an impartial vocational expert, Gretchen A. Bakkenson. (Id.) On July 15, 2015, the ALJ determined that Lesley was disabled from September 1, 2013 through September 30, 2014. (Tr. 21.) During this period of disability, the ALJ found that Lesley had the following severe impairments: coronary artery disease, status post stenting procedure, status post non-Hodgkin's lymphoma, mild cognitive impairment, and an affective disorder. (Tr. 21, 25.) The ALJ found that Lesley had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: he would be off task for 15% of an 8-hour workday as a result of medical treatment and doctor's visits and the side effects of medical treatment. (Tr. 26.)

Next, the ALJ determined that as of October 1, 2014, medical improvement had occurred rendering Lesley able to perform substantial gainful activity, and thus go back to work. (Tr. 30.) According to the ALJ, Lesley could return to light work from October 1, 2014, through the date of decision, July 15, 2015. (Tr. 28-35.) This decision became the Commissioner's final decision when the Social Security Appeals Council denied review. (Tr.

---

[3] The Court will provide an overall summary of the administrative record here and discuss particular record evidence more fully in the context of the parties' pleadings and arguments.

1-4.)

Subsequently, after the Commissioner's denial of disability benefits, Lesley filed a second application for disability benefits. (Doc. 22 at 1.) Based on Lesley's subsequent application, the Commissioner found Lesley disabled and eligible for benefits as of March 22, 2016. (Id.) Thus Lesley was found disabled from September 1, 2013 through September 30, 2014, and again as of and following March 22, 2016. At issue in this matter is the interim period of non-disability of approximately 18 months.

## STANDARD OF REVIEW

When reviewing a Social Security appeal, the Commissioner's decision must be affirmed if it is supported by substantial evidence and the application of correct legal standards. See Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). When reviewing the Commissioner's factual determinations, acting through the ALJ, this Court will affirm if there is substantial evidence supporting those determinations. See Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003); Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is more than a mere scintilla, but less than a preponderance. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Substantial evidence is relevant evidence which a reasonable person might accept as adequate to support a conclusion based on the entire record. Howard, 341 F.3d at 1011; Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the Court may not substitute its judgment for that of the Commissioner. See Batson, 359 F.3d at 1193; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. See Benton, 331 F.3d at 1040; Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). The ALJ's legal determinations are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. See Edlund, 253 F.3d at 1156; McNatt v. Apfel, 201 F.3d 1084, 1087 (9th Cir.

2000).

**COMMISSIONER'S DISABILITY EVALUATION PROCESS**

To qualify for Social Security disability benefits, Lesley must show that he suffers from a "medically determinable physical or mental impairment" that prevents him from performing his prior work activities and any other substantial gainful employment that exists in the national economy, and that the impairment "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. § 423(d)(1)(A). Further, Lesley's disabled status must have existed on or before the expiration of his disability insurance, often referred to as the date last insured. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Tidwill v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1459 (9th Cir. 1995).

*Commissioner's Initial Disability Evaluation*

Social Security regulations prescribe a five-step evaluation process for an ALJ to determine if a claimant is disabled within the meaning of the Social Security Act. See Batson, 359 F.3d at 1190, 1194; 20 C.F.R. § 404.1520. At step one, the ALJ determines if the claimant is presently engaged in substantial gainful activity. See 20 C.F.R. § 404.1520(b). If the claimant is engaged in substantial gainful activity, then he is not disabled. If not, the ALJ moves to step two to determine if the claimant has impairments or combinations of impairments that significantly limit the claimant's physical or mental ability to do basic work activities and are thus "severe" within the meaning of the regulation. See id. § 404.1520(c). At the third step, the ALJ evaluates if the claimant's impairment meets or medically equals the criteria of a listed impairment found in Appendix 1 of Subpart P of Regulation No. 404. If yes, and the impairment meets the requirements for duration under 20 C.F.R. § 404.1509, the claimant is disabled. If the claimant fails to meet or equal the criteria or fails the duration requirement, the ALJ's analysis moves to step four. See 20 C.F.R. § 404.1520(e). Under step four, the ALJ determines the claimant's RFC, which is the continued ability of the claimant to perform physical or mental work activities despite his

impairment or combination of impairments.[4] See id. The ALJ also determines if the claimant's RFC allows him to perform past relevant work. See id. § 404.1520(f). If yes, the claimant is not disabled. If not, the analysis proceeds to a fifth step where the burden shifts to the Commissioner to demonstrate that the claimant is not disabled by presenting evidence the claimant retains sufficient RFC to adjust to perform other jobs that exist in significant numbers either in the region where the claimant lives or in several regions of the country. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g).

*Medical Improvement*

If "a claimant has been found disabled, he or she is entitled to a presumption that the disability still exists." Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983) (further citation omitted). To revoke benefits, "the Commissioner bears the burden of establishing that a claimant has experienced medical improvement that would allow him to engage in substantial gainful activity." Id. The ALJ relies on an eight-step sequential evaluation to determine whether a claimant remains disabled or has medically improved. See 20 C.F.R. § 404.1594(f)(1)–(9). The eight-step process provides: (1) if the claimant is currently engaging in substantial gainful activity, disability ends; (2) if the claimant has an impairment or combination of impairments that meets or medically equals a listing, disability continues; (3) if the claimant does not meet or equal a listing, the ALJ will determine whether "medical improvement" has occurred; (4) if medical improvement has occurred, the ALJ will determine whether the improvement is related to the claimant's ability to work; (5) if there is no medical improvement—or the medical improvement is found to be unrelated to the claimant's ability to work—disability continues; (6) if there has been medical improvement related to the claimant's ability to work, the ALJ will determine whether all of the current impairments, in combination, are "severe," and if not, disability ends; (7) if the claimant's impairments are considered "severe," the ALJ will determine the claimant's RFC, and if the

---

[4]Mental limitations, nonexertional capacity, considers all work-related limitations and restrictions that do not depend on an individual's physical strength, such as difficulties in concentration. SSR 96-8p.

claimant is able to perform past relevant work, disability ends; (8) if the claimant remains unable to perform past relevant work, the ALJ will determine whether the claimant can perform other work that exists in the national economy given his or her RFC, age, education, and past relevant work experience. See 20 C.F.R. § 404.1594(f)(1)-(8).

**DISCUSSION**

*ALJ's Initial Disability Evaluation*

In this case, Lesley's last insured date was December 31, 2018. (Tr. 21.) During the initial five-step evaluation for disability, the ALJ moved through steps one, two, and three, finding that Lesley was disabled from September 1, 2013 to September 30, 2014. (Tr. 21, 24-28.) The ALJ found that "[f]rom September 1, 2013 through September 30, 2014 . . . [Lesley] had the following severe impairments: coronary artery disease, status post stenting procedure, status post non-Hodgkin's lymphoma, mild cognitive impairment and an affective disorder." (Tr. 25.) Prior to her step four evaluation, the ALJ evaluated Lesley's RFC and found that from September 1, 2013 to September 30, 2014, he had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: he would be off-task for 15% of an 8-hour workday as a result of medical treatment and doctor's visits, and the side effects of medical treatment." (Tr. 26.) For this period, based on Lesley's RFC assessment and the vocational expert's testimony, at step four the ALJ found that Lesley could not perform his past relevant work due to his medical conditions. (Tr. 27.) For the same period, at step five and based on the vocational expert's testimony, the ALJ found that there were no jobs in the national economy that Lesley could have performed. Consequently, the ALJ found him disabled for that period of time. (Tr. 27-28.)

*ALJ's Medical Improvement Findings*

As of October 1, 2014, the ALJ found that Lesley had the same severe impairments: coronary artery disease, status post stenting procedure, status post non-Hodgkin's lymphoma, mild cognitive impairment and an affective disorder. (Tr. 28.) However, as of October 1, 2014, the ALJ further found that Lesley had medically improved. (Tr. 30.) According to the ALJ, Lesley's RFC for basic work activities had increased. (Id.) Lesley could now perform

light work. (Id.) However, the ALJ also found certain work-related limitations:

> no climbing ladders, ropes or scaffolds, and no more than occasional climbing ramps and stairs and balancing, stooping, crouching, kneeling and crawling. The claimant must also avoid concentrated exposure to extreme non-weather-related hot and cold temperatures, pulmonary irritants such as dust, odors, fumes and gases, poorly ventilated areas, dangerous machinery with moving and mechanical parts, and unprotected heights that are high and exposed. He is limited to tasks that can be learned by demonstration within 30 days.

(Id.) Despite all of these limitations, the Vocational Expert testified and found that Lesley could perform the jobs of housekeeper, cashier, and fast food worker. (Tr. 34.)

*Lesley's Arguments:*

*1. ALJ Failed to Show Medical Improvement*

From September 1, 2013 through September 30, 2014, Lesley argues that it is undisputed that he was disabled due to several severe impairments: "coronary artery disease, status post stenting procedure, status post non-Hodgkin's lymphoma, mild cognitive impairment, and an affective disorder." (Tr. 25.) Despite these severe impairments, the ALJ found that he had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: he would be off task for 15% of an 8-hour workday as a result of medical treatment and doctor's visits and the side effects of medical treatment." (Tr. 26.)[5]

Because he was found disabled from September 1, 2013 through September 30, 2014, Lesley argues that he is entitled to the presumption that his disability is continuing. (Doc. 18 at 13-14.) Lesley contends that to rebut the presumption, the Commissioner bears the burden of establishing medical improvement. (Id.) Lesley contends, however, that the ALJ did not establish medical improvement, and thus did not rebut the presumption. (Id. at 14.) Lesley maintains that his cancer, although in remission, continued to require multiple office visits and chemotherapy, and continued to cause him fatigue. (Id., (citing Tr. 48, 50).) Further, Lesley claims that his heart symptoms have gotten worse since September 30, 2014,

---

[5]In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a).

- 7 -

specifically, shortness of breath and chest pain on exertion and abnormal EKGs. (Id., (citing Tr. 960, 990).) Finally, Lesley contends that his cognitive deficits also remained limiting. (Id., (citing Tr. 1075 (neuropsychologist noting that "if unsupervised, the patient's problems with path finding, attention and ultimately memory, can pose safety risk; . . . It is therefore, recommended that the patient be monitored during daily activities").)

Regarding the ALJ's RFC assessment as of October 1, 2014, Lesley contends that the ALJ wrongly relied on non-examining physicians because non-examining physician evaluations, unaccompanied by thorough written reports or persuasive testimony, are not considered as substantial evidence, citing Andrews v. Shalala, 53 F.3d 1035 1042 (9th Cir. 1995). (Id. at 15.)

In response, the Commissioner contends that the ALJ properly supported her finding of medical improvement as of October 1, 2014. (Doc. 19 at 3-5.) First, the Commissioner contends that the ALJ properly found that Lesley's coronary artery disease was stable with no more than occasional chest pain reported after experiencing excellent results with stenting procedures. (Id. at 3-4, (citing Tr. 31, 472, 482, 514)), and that he had completed cardiac rehabilitation, (Id., (citing Tr. 31, 785, 954, 990, 996, 1002).)

Next, the Commissioner contends that Lesley's cognitive function improved from a number of borderline to average findings. (Id. at 4, (citing Tr. 1073).) According to the Commissioner, Lesley's neuropsychologist, Dr. Danny Rosenbaum, noted that Lesley "appear[ed] essentially lucid and communicative." (Id., (citing Tr. 1075).)

Next, the Commissioner contends that Lesley's treatment for non-Hodgkin's lymphoma also showed medical improvement. The Commissioner states that Lesley began maintenance therapy in September 2014 (Tr. 856), and at that time, Lesley's doctor, Dr. Vivek Khemka, noted that Plaintiff was "able to carry out work of a light or sedentary nature, e.g., light house work, office work" (Tr. 859), a notation that continued through April 2015. (Id., (citing Tr. 870, 896-97, 905, 916).)

Finally, the Commissioner contends that the ALJ's RFC assessment that Lesley was able to perform light work was supported not only by non-examining state agency physicians

but also by Dr. Khemka. (Doc. 19 at 5.)

In reply, Lesley states that during his disability, the ALJ assessed his RFC and found him capable of performing a "full range of work at all exertional levels," but that he would be off task 15% of the workday due to medical treatments and its side effects. (Doc. 22 at 3, (citing Tr. 26).) Post September 30, 2014, the ALJ identified Lesley's impairments as being the same: coronary artery disease, status post stenting procedure, status post non-Hodgkin's lymphoma, mild cognitive impairment, and affective disorder. (Id., (citing Tr. 28).) However, post September 30, 2014, the ALJ reduced his RFC from a full range of work at all exertional levels to a significant exertional limitation, a limited range of light work. (Id. at 4, (citing Tr. 30).) According to Lesley, the ALJ failed to establish medical improvement, but rather a worsening of his RFC, including an addition of environmental limitations not previously indicated, and a new limitation in learning. (Id.)

As to his coronary artery disease and the Commissioner's view that the stenting results were excellent, Lesley contends that the stenting procedures did not "excellently" improve his condition in 2013, as the stents did not hold and he went on to triple bypass surgery. (Doc. 22 at 5.) Further, post-surgery, Lesley contends there was a decline causing him to experience shortness of breath, coughing, and fatigue. (Id.)

As to his cancer, Lesley contends the medical records indicate that it was, at best, stable, neither improving or getting worse. (Id. at 6-7, (citing Tr. 863, 868).) Lesley states that he remained on chemotherapy for this condition after September 30, 2014. (Id. at 7.) Thus, according to Lesley, his cancer status post October 1, 2014 does not support a conclusion of medical improvement.

Regarding cognitive improvement, while the ALJ pointed out that there was some improvement in cognitive testing, there was no improvement in his ability to remain on task. (Id. at 6.) In fact, Lesley noted that Dr. Rosenbaum, during an April 21, 2015, evaluation, found that his improvement was not so extensive as to alleviate limitations and that he still had "marked cognitive deficits to include verbal and visual memory" and ongoing issues with "distractibility or maintaining attention." (Id., (citing Tr. 1073-74).) Thus, according to

Lesley, the evidence belies a conclusion that there was improvement in his ability to remain on task in a work setting. (Id.)

Overall, Lesley also contends that the Commissioner, in support of medical improvement, utilized improper *post hoc* rationale by citing to portions of the administrative transcript that had not been cited to or relied on by the ALJ. (Id. at 5, (citing Bray v. Commissioner of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) (stating that "long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").)

This Court, following Ninth Circuit Court of Appeals precedent, finds that due to a previous determination that Lesley was disabled from September 1, 2013 to September 30, 2014, Lesley is entitled to a presumption of continuing disability. See Murray, 722 F.2d at 500. Therefore, in order for the Commissioner to revoke its previous finding of disability, she "bears the burden of establishing that a claimant has experienced medical improvement." Id.

Medical improvement means "any decrease in the medical severity of [Lesley's] impairment(s) which was present at the time of the most recent favorable medical decision that [Lesley was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [Lesley's] impairment(s)." Id. "Symptoms are [Lesley's] own description of his or her physical or mental impairment. "Signs" are anatomical, physiological, or psychological abnormalities which can be observed, apart from [Lesley's] symptoms. "Laboratory findings" are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Id., § 416.928.

When the ALJ determines a claimant's RFC, the ALJ determines the continued ability of the claimant to perform physical or mental work activities despite his severe impairments or combination of severe impairments. See 20 C.F.R. § 404.1594(f)(1)-(8). The ALJ assesses

all the evidence (including the claimant's and others' descriptions of limitation, and medical reports) to determine what capacity the claimant has for work despite his severe impairments. See 20 C.F.R. §§ 404.1545(b-d), 416.945(b-d). Here, the ALJ found that Lesley's medical improvement affected his ability to work because she found an increase in Lesley's RFC. (Tr. 30.) According to the ALJ, after reviewing all the evidence and medical records, when she compared Lesley's RFC for the period during which he was disabled with his RFC beginning October 1, 2014, Lesley's RFC for basic work activities had increased. (Id.)

The Court disagrees with the findings of the ALJ. As of October 1, 2014, the ALJ, following review of all the evidence and medical records, made her RFC assessment and overall evaluation of Lesley's medical condition. (Tr. 30.) According to the ALJ, Lesley went from being able to perform a full range of work at <u>all exertional levels</u> down to a significant exertional limitation, that being only able to perform at a <u>light work</u> level. (Id. (emphasis added).) Even at the light work level,[6] the ALJ mandated upon Lesley required environmental limitations not previously specified, and a new limitation in learning. (Cf. Tr. 26 & 30.) Thus, the Court does not find that the ALJ carried her burden of establishing that Lesley experienced medical improvement as of October 1, 2014. Rather, based on the ALJ's RFC assessment and findings, Lesley suffered a marked lessening in his ability to meet the physical and mental demands for sustained performance on the job, as well as new environmental and learning limitations. (Id.)

Further, the Court also agrees with Lesley that the Commissioner improperly invoked *post hoc* rationalizations in her attempt to provide additional support for the ALJ's conclusion that Lesley medically improved post October 1, 2014. See Bray, 554 F.3d at 1226 (stating that "[courts] must judge the propriety of [] the grounds invoked by the [ALJ]. If those grounds are inadequate or improper, the court is powerless to affirm the administrative

---

[6]According to Social Security regulations, light work requires lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(c).

action by substituting what it considers to be a more adequate or proper basis.") On numerous occasions the Commissioner cited support in the administrative transcript for medical records that the ALJ did not cite in support of her decision. (See, e.g., Doc. 19 at 3-4, citing Tr. 472, 482, 514, 856, 859, etc.)[7]

Therefore, based on the previous determination that Lesley was disabled from September 1, 2013 to September 30, 2014, Lesley is entitled to a presumption of continuing disability. After reviewing all the evidence and medical records, the ALJ downgraded Lesley's ability to work post October 1, 2014. The ALJ's opinion shows a worsening of Lesley's condition, not a medical improvement, and thus the Commissioner, through the ALJ, did not carry her burden of rebutting the presumption of disability by establishing that Lesley experienced medical improvement.

*2. Lesley's Subjective Complaints*

Alternatively, even if the ALJ's decision is construed as demonstrating medical improvement, Lesley furthermore contends that his disability continued because the ALJ committed legal error when she improperly refused to credit his testimony about the severity of his subjective symptoms. (Doc. 18 at 15-18.) When a decision of the Commissioner is based on harmful legal error, it is to be vacated. See Andrews, 53 F.3d at 1039; see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (stating that a district court may not find harmless error by affirming the Commissioner on a ground not relied upon by the ALJ).

At the ALJ hearing, Lesley testified that "I forget things"; "I don't know when I forget things" (Tr. 51); "I forget what my employer told me to do" (Tr. 51); "I'll forget things at the grocery store" (Tr. 51); "I can walk around for 30 minutes or go up the stairs, but I will need to sit down due to my heart" (Tr. 55); "I have fatigue due to chemotherapy and if I do something physical I have to take a nap" (Tr. 55); the chemotherapy caused Lesley bone pain

---

[7]When the ALJ cited 13F in support of her decision, she failed to designate what portion of 13F she was citing. The administrative transcript at 13F is a 57 page document. (Tr. 947-1003.) Certainly, it is not the function of this Court, nor could it, to provide an interpretation of the medical records contained in this 57-page document of the administrative transcript.

which hurts his back and shoulders, and to be able to lift only 15 pounds (Tr. 57); he can walk 30 minutes at a time, and can comfortably sit (Tr. 57).

Initially, here, after considering the evidence of record, the ALJ did not find that Lesley was malingering, and further concluded that Lesley's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (Tr. 31.) In this circumstance, the ALJ may reject Lesley's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). Specifically:

> The ALJ may consider at least the following factors when weighing the claimant's credibility: [the] claimant's reputation for truthfulness, inconsistencies either in [the] claimant's testimony or between [his] testimony and [his] conduct, [the] claimant's daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains.

Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (internal quotations omitted). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Id. at 958.

Lesley alleges that the ALJ did not specifically identify his reported limitations or the evidence that the ALJ believed conflicted with the existence of his limitations, and that she did not provide specific findings as to credibility by stating clear and convincing reasons for each, a necessary analysis to explain her resolution of any conflicts in the record. (Doc. 22 at 7, (citing Tr. 30-33)); see also Treichler v. Commissioner of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014) (stating that it is the ALJ's responsibility to resolve conflicts and ambiguities in the record). According to Lesley, if the ALJ had properly credited the severity of his symptoms, it would allow an RFC of no more than a limited range of sedentary work[8] and if limited to unskilled sedentary work, he would be deemed conclusively disabled as he was more than 50 years of age. (Doc. 18 at 14-15.)

---

[8] According to Social Security regulations, sedentary work requires lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a).

- 13 -

1  "Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (quoting 42 U.S.C. § 423(d)(5)(A) (2006)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on [the] lack of objective medical evidence to fully corroborate the alleged severity of [those symptoms]." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

In Brown-Hunter v. Colvin, 806 F.3d 487, 494-95 (9th Cir. 2015), the court found harmful legal error where the ALJ did not specifically identify an inconsistency between plaintiff's testimony and the record and simply stated her non-credibility conclusion and summarized the medical evidence that supported her RFC determination. Id. The court stated that "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited." Id. at 494. Thus, general findings by the ALJ are insufficient; rather, the ALJ must identify what testimony is not credible and what objective evidence undermines the claimant's complaints. Id. at 493.

Here, the ALJ acknowledged that Lesley complained of continued and constant back and shoulder pain, and also complained of residual bone pain from his chemotherapy treatments, for which he continued to take medication. (Tr. 31.) Post October 2014, the ALJ further acknowledged that Lesley complained of persistent back pain, uncontrolled with medications. (Id.) However, the ALJ generally concluded that the objective record failed to substantiate Lesley's complaints because treatment for back pain had been both conservative and routine, and clinical findings did not support a disabling impairment. (Id.) Even though the ALJ acknowledged that Lesley was having back spasms, she rejected his subjective complaints about the severity of his symptoms. Rather, despite Lesley's testimony to the contrary, the ALJ found that post October 1, 2014, Lesley was able to perform light work, including the job requirement of lifting 20 pounds.

The Court finds that the ALJ's general findings were harmful legal error because she

arbitrarily discredited Lesley's testimony. See Brown-Colvin, 806 F.3d at 493. The ALJ did not specifically resolve her findings with Lesley's testimony that due to bone pain in his back and shoulder from chemotherapy treatments that he could only lift 15 pounds. Lesley was on maintenance chemotherapy throughout the period and his bone pain is attributable to this treatment. Further, Lesley did not state that his bone pain was "debilitating." Rather, he said it caused him trouble going up and down stairs, allows him to walk 30 minutes at a time, allows him to lift approximately 15 pounds and causes no problems with sitting. The ALJ did not provide specific, clear and convincing reasons for rejecting Lesley's testimony and did not cite evidence that would undermine Lesley's complaint that he can only lift up to 15 pounds and walk 30 minutes at a time. Thus, due to the ALJ's legal error, the Court cannot meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.

*3. Treating Source Opinion*

Alternatively, Lesley further contends that he remained disabled because the ALJ did not give proper weight to his treating physicians but rather gave improper weight to non-examining physicians which resulted in a disability finding that was not based on substantial evidence. (Doc. 18 at 19-22.) Lesley relies on two of his treating physicians, Dr. Patel and Dr. Rosenbaum, who provided medical opinions that found him unable to sustain a competitive work pace. (Id. at 19.)

Social Security Rules expressly require that a treating doctor's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2). In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, more weight is given to the opinion of a treating physician than to the opinions of non-treating physicians because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See Andrews, 53 F.3d at 1040-41. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. Lester, 81 F.3d at 830.

Similarly, the Ninth Circuit holds that greater weight is to be given to the opinion of an examining physician over and above the opinion of a non-examining physician. See Andrews, 53 F.3d at 1041. As with a treating physician, the ALJ may reject the opinion of an examining physician, even if contradicted by a non-examining physician, only by providing specific, legitimate reasons that are supported by substantial evidence in the record. See Moore v. Commissioner of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).

On August 8, 2014, Lesley's treating physician, Dr. Patel, found that he should recover from his triple-bypass surgery, but that it will be difficult for him to recover from leukemia and his chemotherapy treatments. (Tr. 592-93.) Dr. Patel further found that based on Lesley's medical situation and condition, he should be off work for the next 12 months. (Id.)[9]

On April 21, 2015, Lesley's treating neuropsychologist, Dr. Rosenbaum, opined that Lesley experiences short-term memory problems that are likely related to distractibility and difficulties maintaining attention; and that although his "recognition memory" is "essentially satisfactory," he has "some *marked cognitive deficits*" in his "verbal and visual memory." (Tr. 1073-74 (emphasis added).) Dr. Rosenbaum opined that Lesley's deficits "may pose a problem" for activities of daily living and that Lesley should be "monitored" during daily activities for safety reasons. (Tr. 1075; Doc. 22 at 6 (arguing that Dr. Rosenbaum's evidence

---

[9]Dr. Patel did provide an opinion on an issue reserved for determination by the Commissioner. Thus, his opinion is not entitled to special weight, but it is still entitled to be weighed properly. See SSR 96-5p (subsequently rescinded as of March 27, 2017, but in effect at the time the ALJ issued her ruling).

disputes any conclusion regarding Lesley's ability to remain on task in a work setting).) Thus, according to circuit precedent, these opinions may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. See Lester, 81 F.3d at 830.

Here, in finding Lesley able to work as of October 1, 2014, the ALJ relied on the opinions of non-examining state agency physicians. (Tr. 32-33, (citing Tr. 78-97).) The ALJ gave the non-examining physicians greater weight in this post October 1, 2014 decision because their opinions were consistent with the ALJ's finding that Lesley had medically improved. (Id.) Although the ALJ acknowledged that non-examining physicians' opinions are not to be given as much weight as those of treating or examining physicians, the ALJ found that their opinions were well-supported by objective diagnostic testing, trained observations, an impartial analysis of the evidence of record, and well-reasoned conclusions. (Id.)

Regarding the burden for providing specific and legitimate reasons for rejecting the opinions of Lesley's treating physicians, the ALJ first stated that she gave treating doctor Patel's opinion little or no weight because it was inconsistent with the greater objective medical record and Dr. Patel's own exam findings, and he did not list specific work-related restrictions. (Tr. 33.) Regarding Dr. Rosenbaum, the ALJ stated that she only gave his evaluation minimal weight. (Id.) The ALJ acknowledged that Dr. Rosenbaum's evaluation demonstrated that Lesley had some memory loss, dysnomia, agitation, and a far-off look. (Id.) The ALJ further acknowledged that Lesley's wife was with him during his evaluation with Dr. Rosenbaum and provided her opinion that he could not work due to his mental impairments. (Id.) The ALJ finally noted that Dr. Rosenbaum did not assess Lesley's RFC. (Id.)

First, the Court finds that the ALJ's reasons for rejecting the opinions of Dr. Patel and Dr. Rosenbaum do not meet the test of providing "specific and legitimate reasons" supported by substantial evidence in the record. See Lester, 81 F.3d at 830. Rather, the ALJ merely rejected Dr. Patel's opinion outright, without specific or legitimate citation to the

administrative record. (Tr. 33.) Regarding the period prior to October 2014, the ALJ had previously found that Lesley's medical symptoms would cause him to be off task 15% of the work day, and thus consistent with disability. (Tr. 26.) Here, Dr.Patel provided his opinion of Lesley's ongoing fatigue, status post coronary artery bypass surgery, and lymphoma, with his current treatment regimen of chemotherapy. (Tr. 592-95.) The ALJ does not explain why Dr. Patel's opinion does not support an ongoing off task limitation. (Tr. 33.)

As to Dr. Rosenbaum, despite Dr. Rosenbaum findings that Lesley had "some *marked cognitive deficits*" in his "verbal and visual memory," that his deficits "may pose a problem" for activities of daily living, and that he should be "monitored" during daily activities for safety reasons, the Court finds that the ALJ did not provide specific and legitimate reasons for rejecting Dr. Rosenbaum's findings or her decision to give his opinion minimal weight. (Tr. 32-33.)

Next, the Court finds that the ALJ's decision not to give proper weight to Lesley's treating physicians but rather to give improper weight to non-examining state agency physicians was a decision that was not based on substantial evidence. The Court finds that the discrepancy between the ALJ's giving minimal weight to its state agency physicians when the ALJ found Lesley disabled and then giving them great weight when the ALJ found Lesley able to return to work is an inconsistency that cannot be satisfactorily explained or affirmed. In finding Lesley disabled from September 1, 2013 through September 30, 2014, the ALJ gave the opinions of the state agency physicians less weight stating that they were not privy to the evidence as a whole. (Tr. 27.) Subsequently, however, the ALJ credits the same medical evidence that it previously rejected. (Tr. 32-33.) The two varying conclusions cannot be reconciled. The rejection and crediting of the same opinions in the same decision does not carry the ALJ's burden of providing a specific and legitimate reason to reject Lesley's treating doctors' opinions based upon substantial evidence in the record.

Accordingly, on the basis of the foregoing,

**IT IS HEREBY ORDERED** that this matter is **REVERSED and REMANDED** to the Commissioner for a computation of benefits.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this case.

DATED this 6th day of June, 2017.

_____
Stephen M. McNamee
Senior United States District Judge